UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSE LAPORTE,

                                        Plaintiff,                  1:24-cv-1124
                                                                        (ECC/DJS)

v.

BRIAN SULLIVAN,

                                        Defendant.
_____

Michael H. Sussman, Esq., *for Plaintiff*
Noah C. Engelhart, Esq., *for Defendant*

**Hon. Elizabeth C. Coombe, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

Plaintiff Jose Laporte filed this action alleging that Defendant Brian Sullivan, a New York State Department of Corrections and Community Supervision (DOCCS) Lieutenant, unlawfully discriminated against him in violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C § 1983. Dkt. No. 1. Presently before the Court is Defendant's motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 9. The motion is fully briefed. Dkt. Nos. 11, 12. For the following reasons, Defendant's motion to dismiss is denied.

**I.    FACTS**[1]

Plaintiff Jose Laporte, a male of Hispanic national origin with a "dark complexion," Complaint (Compl.), Dkt. No. 1 ¶ 1, worked as a corrections officer for the New York State

---

[1] These facts are drawn from the Complaint. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67,

Department of Corrections and Community Supervision (DOCCS)[2] from 2003 through December 2020 when he was promoted to a one-year probationary term as a Sergeant at Greene County Correctional Facility (Greene), *id*. ¶¶ 4-5. Defendant is a DOCCS Lieutenant. *Id*. ¶¶ 2, 12. During his probationary term, Plaintiff was primarily stationed in a unit supervised by non-party Lt. Mike Farrell until September 2021 when Plaintiff was transferred to Downstate Correctional Facility for a "five-six-week period," before returning to Greene in October 2021. *Id*. ¶¶ 6, 10-11.

Farrell prepared Plaintiff's professional evaluation for April through July. Compl. ¶ 9. Defendant prepared Plaintiff's next professional evaluation even though Farrell had been Plaintiff's supervisor for his work at Greene during the review period. *Id*. ¶¶ 12-13. Plaintiff found this puzzling. *Id*. ¶ 13.

Defendant gave Plaintiff the evaluation on November 2, 2021. Compl. ¶ 15. The evaluation stated that Plaintiff "was not adapting well to his supervisory role," "needed to make greater effort to complete assignments promptly," and "highlighted other areas for improvement." *Id*. ¶ 15. At some point, Farrell complained to his captain that Defendant had prepared Plaintiff's evaluation even though Farrell was Plaintiff's actual supervisor. *Id*. ¶ 14. On the same day that Defendant gave Plaintiff his evaluation, Farrell also "refuted" the evaluation; stated that Plaintiff had proven, "without question" to be a "very capable supervisor; and supported his continued

---

74–75 (2d Cir. 2020), but does not accept as true any legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] Plaintiff refers to the relevant entity as the "New York State Department of Corrections Services and Supervision [DOCSS]," *see* Compl. ¶ 1, however the Court assumes for purposes of this motion that Plaintiff is referring to DOCCS, the agency responsible for maintaining the New York state prisons. The Court also notes that Plaintiff refers once to DOCCS as a "defendant" in the body of the Complaint, *id.,* but DOCCS is not otherwise identified or named as a defendant in this matter, including in the caption, the civil cover sheet, or anywhere else in the body of the Complaint. Accordingly, the Court does not construe DOCCS to be a named defendant in this action.

employment as a sergeant. *Id*. ¶ 18. On the same day, Plaintiff wrote to the DOCCS Assistant Commissioner for Human Resources to report that Defendant had been verbally abusive and dismissive on specific occasions and provided details. *Id*. ¶ 19. At some point, Plaintiff wrote to the Greene Superintendent "protesting the accuracy of the evaluation and citing his prior two evaluations." *Id*. ¶ 17. As a result of the poor performance review from Defendant, on November 23, 2021, DOCCS demoted Plaintiff to Corrections Officer, effective November 30, 2021. *Id*. ¶ 20. Plaintiff had never been counseled either informally or formally by Defendant or any other supervisor. *Id*. ¶ 31.

After Plaintiff's demotion, DOCCS employees submitted letters to the DOCCS personnel office in Albany. One anonymous DOCCS employee, claiming anonymity for fear of retaliation, wrote, "I have witnessed many new Sergeants get demoted or they were forced to transfer or resign. Majority of these supervisors are either minorities or females." Compl. ¶ 22. Another sergeant wrote, "He was known to his fellow Sergeants as someone who knew what he was doing and could take care of his own areas. It is incredibly easy to sink at Green as a new Sergeant. Jose did not allow himself to sink, there were days where he had multiple incidents, and he was able to multitask his way through it while continuing to learn. . . . Jose was a co-worker that you could count on." *Id*. ¶ 23.

Another sergeant wrote that (1) he had heard Defendant talk about Plaintiff stating, "people like him don't make good sergeants," Compl. ¶ 24, and, when discussing Plaintiff's workers' compensation leave, stating, "that's typical of those kinds of people," referring to minority officers, *id*. ¶ 25, and (2) "It was very apparent that [Defendant] had a problem with [Plaintiff] that had nothing to do with [Plaintiff]'s work. Not only have I witnessed [Defendant] treating [Plaintiff] like the manner described above … I have witnessed him run out a number of other SGTS, mostly

those that are a minority," *id.* ¶ 26.  Another former subordinate of Defendant's wrote, "If you're a female or considered a minority within the workplace, HE WILL FIND A WAY TO BELITTLE YOU AND ATTEMPT TO GET YOU TO RESIGN. . ."  *Id.* ¶ 27.  A Hispanic sergeant who had previously worked with Defendant wrote that Defendant created a hostile work environment for minorities, featuring discriminatory comments, excessive workload, and unremitting intimidation, at one point described her as a "city idiot," and "did everything in his power to demote me, solely because I was a female Hispanic supervisor." *Id.* ¶¶ 28-29.  Farrell wrote:

> during his time here at Greene Sgt. LaPorte conducted himself in a professional manner and his work was above satisfactory.  He took every opportunity to learn everything he could, better himself and guide him in the right direction.  Sgt. LaPorte was always extremely receptive to my direction.  When supervisors are not approachable or belittle you, it creates an extremely difficult work environment.  I believe Sgt. LaPorte, if given the chance to be a Sergeant again, would in time be an exceptional sergeant and an asset to the department.

*Id.* ¶ 30.

Two "Caucasian" probationary sergeants were not demoted even though one was arrested for a domestic violence incident and the other was a "flagrant time and attendance abuser, calling out of work due to inebriation, and failing to do his job when he did report to work." Compl. ¶ 32.  Although DOCCS protocol and state law requires supervisors to provide notice to employees of material deficiencies and provide a reasonable chance to adjust performance, Defendant did not provide Plaintiff with reasonable notice of any deficiencies or an opportunity to improve his performance. *Id.* ¶¶ 33-34.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

When evaluating a discrimination claim at the motion to dismiss stage, courts are instructed that "a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss;" however, "it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC*, 768 F.3d at 254 (quoting *Iqbal*, 556 U.S. at 680) (cleaned up).

### III.  DISCUSSION

Defendant argues that Plaintiff's "conclusory allegations" are insufficient to state a prima facie case of discrimination because Defendant lacked the requisite discriminatory intent. Def. Memorandum of Law (Def. Mem.) at 8, Dkt. No. 9-1.[3]  Plaintiff responds that the Complaint alleges "direct evidence of racial hostility expressed by the defendant to several persons and a pattern of sabotaging the promotions of members of minority groups," such as alleged racially

---

[3] Citations to page numbers refer to pagination generated by ECF.

discriminatory comments and preferential treatment of non-minority officers. Plaintiff's Opposition (Pl. Opp.) at 10, Dkt. No. 11.

"[P]ublic employees aggrieved by discrimination in the terms of their employment may bring suit under 42 U.S.C. § 1983 against any responsible persons acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (citing *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 122–23 (2d Cir. 2004)). State employees acting in their official capacities are acting under color of state law. *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (citing *West v. Atkins,* 487 U.S. 42, 48, (1988)). "Once the color of law requirement is met, a plaintiff's equal protection claim parallels his Title VII claim, except that a § 1983 claim, unlike a Title VII claim, can be brought against an individual." *Vega*, 801 F.3d at 88 (quoting *Feingold*, 366 F.3d at 159) (cleaned up). "Thus, for a § 1983 discrimination claim to survive a motion for judgment on the pleadings or a motion to dismiss, a plaintiff must plausibly allege a claim under the same standards applicable to a Title VII claim—and that the adverse action was taken by someone acting 'under color of state law.'" *Id*.

A prima facie case of retaliation under Title VII or § 1983 requires "a showing (1) that [Plaintiff] is a member of a protected class, (2) that [Plaintiff] was qualified for the position [Plaintiff] sought, (3) that [Plaintiff] suffered an adverse employment action, and (4) can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). The Second Circuit has cautioned district courts to "be mindful of the elusive nature of intentional discrimination" at the motion to dismiss phase "'[b]ecause discrimination claims implicate an employer's usually unstated intent and state of mind' and therefore 'rarely is there direct, smoking gun, evidence of discrimination.'" *Buon v. Spindler*, 65 F.4th 64, 83 (2d Cir. 2023) (quoting *Vega*, 801 F.3d at 86). As a result, for intent, the

allegations in the complaint "need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination, but rather need only give plausible support to a minimal inference of discriminatory motivation." *Id.* at 83 (quotation and citation omitted).

Plaintiff argues that he was a member of a protected class based on his race/national origin, was qualified for the position of sergeant, experienced an adverse action when he was demoted from the sergeant position, and that his race was a motivating factor. Compl. at ¶¶ 42-43; Pl. Opp. at 9-10. For purposes of this motion, Defendant does not contest the first three elements, and argues only that Plaintiff has not sufficiently alleged discriminatory intent. Def. Mem. at 6.

Plaintiff alleges that Defendant repeatedly expressed hostile attitudes towards racial minorities, including that "people like him don't make good sergeants" when referring to Plaintiff. Compl. ¶¶ 24-28. Defendant argues that the statements are "too vague to establish racial bias."[4] Dkt. No. 12 at 5.

In *Tolbert v. Smith*, the Second Circuit addressed the issue of whether the plaintiff, a Black man who taught cooking classes at a public high school, had sufficiently established discriminatory motive in the decision to deny him tenure.[5] 790 F.3d 427 (2d Cir. 2015). The plaintiff "identified racially offensive comments allegedly made by" the principal less than one year before the district

---

[4] Defendant's attempts to dismiss his allegedly discriminatory comments as "stray," and therefore irrelevant is misguided. "[T]he task is not to categorize remarks "either as stray or not stray," and "disregard [remarks] if they fall into the stray category," but rather to assess the remarks' "tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class." *Galimore v. City Univ. of New York Bronx Cmty. Coll.*, 641 F. Supp. 2d 269, 284 (S.D.N.Y. 2009) (quoting *Tomassi v. Insignia Fin. Group, Inc.,* 478 F.3d 111, 116 (2d Cir. 2007)).

[5] Although *Tolbert* involved a summary judgment motion, not a motion to dismiss, it is relevant here because the summary judgment standard is more demanding than the motion to dismiss standard.

denied him tenure. *Id*. at 437. Specifically, the principal: (1) asked the plaintiff, "Do you only know how to cook black, or can you cook American too?" (2) asked a student "how [she] expected to learn if all [she] was learning to cook was black food," and (3) told another student "black kids can't learn in a cooking class because all they want to do is eat." *Id*. at 437. The plaintiff also "submitted evidence" that the principal "changed the person who conducted [his] year-end evaluation without providing notice to [him]." *Id.* at 438.

The Second Circuit disagreed with the district court's finding that the principal's "stray remarks were too attenuated from the tenure decision and not probative of [the principal's] intent." *Tolbert,* 790 F.3d at 437. "The more remote and oblique the remarks are in relation to the employer's adverse action the less they prove that the action was motivated by discrimination." *Id.* (quotation omitted). "But there is no bright-line rule for when remarks become 'too attenuated' to be significant to a determination of discriminatory intent." *Id.*

The Second Circuit concluded that the "irregularities" in the review process "when combined with [the principal's] alleged remarks," which were "made during a single school year" before the employment decision; "by the de facto decisionmaker;" "clearly suggest[ing] racial bias," were "sufficient to establish a prima facie case of discrimination." *Tolbert,* 790 F.3d at 437-38.

Here, assuming the truth of Plaintiff's allegations as required for a motion to dismiss, Defendant made racially offensive statements including statements of "people like him" and "those kinds of people," and departed from the normal procedures for reviewing Plaintiff by changing the reviewer and not giving Plaintiff an opportunity to address performance issues. This is sufficient to allege discriminatory motive. *See Tolbert,* 790 F.3d 427; *see also Stratton v. Dep't for the Aging for City of New York*, 132 F.3d 869, 879 n. 6 (2d Cir. 1997) ("Actions taken by an employer that

disadvantage an employee for no logical reason constitute strong evidence of an intent to discriminate."); *George v. Roswell Park Cancer Inst. Corp.*, No. 1:22-cv-1006, 2025 WL 2208427 at *13 (W.D.N.Y. Aug. 4, 2025) (Supervisor's comment that "[Y]ou people from South India are dark-skinned and you should not have low Vitamin-D levels" was "sufficiently probative of discrimination to support [plaintiff's] 'minimal' burden at this stage of the case.").

Plaintiff also points to the more favorable treatment two "Caucasian" sergeants received. Pl. Opp. at 12-13.  The parties disagree about whether they are sufficiently similar to Plaintiff to support an inference of discrimination.  *Id.*; Dkt. No. 12 at 7-9.  Given that "the question whether two employees are similarly situated" is normally "a question of fact for the jury," *George*, 2025 WL 2208427 at *11 (quotation omitted), and Plaintiff's other allegations of discriminatory motive, this issue will not be resolved at this stage of the litigation.

In sum, Plaintiff has introduced sufficient evidence to meet his minimal burden of suggesting an inference of discriminatory motivation.  *See Buon*, 65 F.4th at 84 (Plaintiff "is permitted to create a mosaic with the bits and pieces of available evidence that, taken together, support a plausible inference of intentional discrimination.") (quotation omitted); *see also Littlejohn*, 795 F.3d at 311.

## IV.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss under Rule 12(b)(6), Dkt. No. 9, is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 15, 2025

Elizabeth C. Coombe
U.S. District Judge

9